1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10

WENDY A.,

                    Plaintiff,

11

12          v.

13    COMMISSIONER OF SOCIAL
      SECURITY,

14

                    Defendant.

15

CASE NO. 2:18-CV-01186-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

16        Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of

17    Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB"). Pursuant

18    to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties

19    have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

20        After considering the record, the Court concludes the Administrative Law Judge ("ALJ")

21    erred in her assessment of Plaintiff's migraines at Step Two, Plaintiff's subjective symptom

22    testimony about her migraines, and medical opinion evidence from Dr. Natalia Murinova, M.D.

23    Had the ALJ properly considered Plaintiff's migraines at Step Two, Plaintiff's testimony, and

24    Dr. Murinova's opinion, the residual functional capacity ("RFC") may have included additional

limitations. The ALJ's error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Social Security Commissioner ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On September 3, 2014, Plaintiff filed an application for DIB, alleging disability as of June 15, 2011. *See* Dkt. 8, Administrative Record ("AR") 15. The application was denied upon initial administrative review and on reconsideration. *See* AR 15. ALJ Kimberly Boyce held a hearing on February 14, 2017. AR 33-77. In a decision dated July 21, 2017, the ALJ determined Plaintiff to be not disabled. AR 12-36. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by failing to: (1) find her migraines were a medically determinable severe impairment at Step Two of the sequential evaluation process; (2) state clear and convincing reasons to reject Plaintiff's subjective symptom testimony; and (3) provide specific and legitimate reasons to discount medical opinion evidence from Dr. Murinova. *See* Dkt. 10.

Plaintiff amended her alleged onset date of disability to July 10, 2012. AR 15. Accordingly, because the ALJ found Plaintiff had sufficient coverage to remain insured through March 31, 2013, the relevant inquiry is whether Plaintiff became disabled between the alleged onset date – July 10, 2012 – and the date last insured – March 31, 2013.[1] AR 15.

---

[1] Plaintiff does not dispute this finding from the ALJ. *See* Dkt. 10.

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

I. **Whether the ALJ committed harmless error in assessing Plaintiff's migraines at Step Two.**

Plaintiff first argues the ALJ erred by failing to find her migraines[2] were a severe impairment at Step Two of the sequential evaluation process. Dkt. 10, pp. 3-10. Defendant concedes the ALJ erred in her assessment of Plaintiff's migraines at Step Two, but contends any error was harmless. Dkt. 11, pp. 2-3.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)). An error at Step Two may be harmless if the ALJ properly considers limitations posed by the omitted impairment subsequently in the sequential evaluation process. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

---

[2] The ALJ refers to Plaintiff's "headaches" and "migraines." *See, e.g.*, AR 18, 19, 22. For clarity, the Court will refer to Plaintiff's impairment as "migraines" and will consider evidence referencing both headaches and migraines in determining whether the ALJ erred.

In this case, the ALJ discussed Plaintiff's migraines in the decision when discounting Plaintiff's subjective symptom testimony and the medical opinion evidence. *See* AR 19, 21-25, 28-29. The ALJ did not state she considered the limiting effects of Plaintiff's migraines in formulating the RFC or in any other part of her decision. *See* AR 15-31. Moreover, as discussed in detail below, the ALJ's assessments of Plaintiff's subjective symptom testimony and the medical opinion evidence contained error.

Because the ALJ's decision does not reflect she considered the limitations caused by Plaintiff's migraines, the Court cannot determine the ALJ's error at Step Two was harmless. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout*, 454 F.3d at 1055-56) ("'[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'"); *see also Betts v. Berryhill*, 2017 WL 2598889, at *7 (W.D. Wash. June 15, 2017) (finding harmful error at Step Two because "[n]owhere in the ALJ's opinion does she specifically consider the limitations posed by the psoriasis or discuss it in any detail"); *Stansbury v. Astrue*, 2012 WL 368029, at *5 (W.D. Wash. Jan. 3, 2012) (holding the ALJ's Step Two error was harmful because "while the ALJ may have referred to some of the symptoms [the claimant] suffered as a result of bursitis and piriformis syndrome, he did not specifically refer to those conditions and how they may relate to [the claimant's RFC]").

## II.     Whether the ALJ provided clear and convincing reasons to discount Plaintiff's testimony.

Plaintiff next argues the ALJ failed to provide any clear and convincing reason to discount Plaintiff's subjective symptom testimony about her migraines. Dkt. 10, pp. 10-15.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted).

The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834 (citation omitted). While Social Security Administration ("SSA") regulations have eliminated references to the term "credibility," the Ninth Circuit has held its previous rulings on claimant's subjective complaints – which use the term "credibility" – are still applicable.[3] *See* Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2016 WL 1237954 (Mar. 24, 2016); *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing Ninth Circuit precedent). Questions of credibility are solely within the ALJ's control. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984).

Plaintiff testified at the hearing that during the relevant period, she experienced daily headaches. AR 58. Plaintiff also testified she experienced two to four severe migraines per month during the relevant period. AR 53. When Plaintiff experiences a migraine, she must "lie down in the dark" because sound and light are "intolerable." AR 53, 64-65. Plaintiff similarly wrote in a Function Report – Adult, completed on January 1, 2015, that when she has a migraine, "it is challenging to do much at all." AR 231.

Plaintiff testified that when she began seeing Dr. Murinova at the headache and migraine clinic in December 2012, she learned "the majority of the daily headaches were rebound headaches from pain medications" she took for fibromyalgia pain. AR 58. Plaintiff can only take two doses per week of "migraine abortive medications," which means she "cope[s] with a pretty

---

[3] Because the applicable Ninth Circuit case law refers to the term "credibility," the Court uses the terms "credibility" and "subjective symptom testimony" interchangeably.

high level of pain before" taking a dose, as she does not know if she will need those doses for worse pain later in the week. AR 58.

Plaintiff stated that her daily activities depend on whether she has a migraine that day. If she does not have a migraine, Plaintiff may play video games or be on the computer. AR 59, 64-65. But if Plaintiff has a migraine, she will take migraine medication, lie down with the lights off, and try to sleep. AR 65. If the medication does not help her migraine after two hours, she will take another pill. AR 65. Plaintiff testified she is on the medication Lyrica, which can cause her to fall asleep for up to four hours. AR 67; *see also* AR 238 (Plaintiff writing in the Function Report that Lyrica causes drowsiness and memory issues). She testified medication "sometimes" manages her migraine pain. AR 65. Plaintiff stated her migraine symptoms "have fluctuated" since 2012, as "there have been times when" she had "two to three migraines a week." AR 65. Moreover, Plaintiff stated that a week before the hearing, she had to drop a non-vocational class because she "missed two out of six classes due to migraines." AR 64.

In assessing Plaintiff's testimony about her migraines, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 22. However, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 22. Specifically, the ALJ discounted Plaintiff's subjective symptom testimony (1) because Plaintiff was employed prior to the alleged onset date of disability; (2) due to allegedly inconsistent reports regarding the nature and severity of her migraines; (3) in light of her daily activities; and (4) given the objective medical evidence. AR 22-25.

First, the ALJ rejected Plaintiff's subjective symptom testimony because Plaintiff reported migraines "concurrent[ly] with past gainful employment, which ended for reasons unrelated to her functional capacity." AR 22. A claimant's testimony may be undermined if the ALJ finds the claimant left her job for reasons unrelated to her disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). In this case, the ALJ noted that despite reports to treatment providers that she has experienced migraines since she was a teenager, Plaintiff "was gainfully employed between 2005 and December 2008[.]" AR 22. But the record reflects Plaintiff reported worsening migraines near her alleged onset date of disability. On December 21, 2012, Dr. Murinova noted Plaintiff reported her headaches and migraines had worsened over the last few months – i.e., near her alleged onset date of July 10, 2012. AR 543. Plaintiff's migraines had become "more constant" and "extremely disabling." AR 543. Dr. Murinova opined the "most likely factor" leading to Plaintiff's worsening headaches and migraines was "the sudden death of her mom" in 2009. AR 545. Dr. Murinova wrote this event "was extremely stressful" and "emotional" for Plaintiff, "who was very closely attached" to her mom. AR 545. Accordingly, the record fails to support the ALJ's finding that Plaintiff's testimony is undermined for her previous work. *See Trevizo*, 871 F.3d at 682 (where a claimant's symptoms occurred after she stopped working, "there is no reason that this prior work would contradict new . . . symptoms").

In discounting Plaintiff's migraine testimony for her previous work, the ALJ also noted that, in March 2011, Plaintiff reported to a treatment provider that her most recent job "ended because of budget cuts." AR 22 (citing AR 296-97). Yet Plaintiff alleged disability beginning July 10, 2012 – sixteen months after that report. *See* AR 15. Given the lapse in time between the end of Plaintiff's job and her alleged onset date of disability, the record does not support the

ALJ's inference that Plaintiff sought disability benefits because she was laid off from work. *See*

*McGowan v. Astrue*, 2012 WL 5390337, at *5 (W.D. Wash. Oct. 17, 2012) (holding the record

did not support the ALJ's finding that the claimant sought disability benefits because she was

laid off where "at least a year passed between the time she stopped working" and her alleged

onset date of disability). In all, because the ALJ overlooked relevant evidence regarding

Plaintiff's worsening migraines and the timing of her alleged onset date of disability, the ALJ's

first reason for discounting Plaintiff's migraine testimony is not clear and convincing nor

supported by substantial evidence.

     Second, the ALJ rejected Plaintiff's testimony about her migraines due to purportedly

inconsistent statements Plaintiff made about this condition. AR 22. The ALJ remarked:

> In July 2012, the claimant was referred to a specialist (Dr. Murinova) for migraine headaches. At this time, the claimant told treating physician Dr. [Dane Travis, M.D.] "she has a weird affect with migraines but no real pain." She further explained that her migraine issues were "not optical but feels like she has made errors in understanding what someone is saying."

> When the claimant visited Dr. Murinova in December 2012, she alleged having daily headaches for the prior four years. Contrary to her prior description to Dr. Travis, she now reported having "disabling" pain from her headaches, as well as nausea, light sensitivity, and noise sensitivity. This statement to Dr. Murinova is incompatible with her other documented treatment records between 2008 and December 2012, which do not refer to daily disabling headaches. Instead, during medical care for an acute knee injury in May 2010, the claimant denied having any health problems.

> . . . . In addition to her inconsistent reporting as to the nature and severity of her headaches, the claimant has also given inconsistent statements about the effects of medication on her headaches.

AR 22-23 (citations omitted).

     In determining how much weight to give to a claimant's testimony, an ALJ may consider

"inconsistencies in [the] claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir.

2005) (citation omitted). Here, the ALJ found Plaintiff's testimony inconsistent because in July

2012, Plaintiff reported to Dr. Travis that she suffered from "no real pain" from her migraines, although she reported to Dr. Murinova in December 2012 that her migraines were "disabling." AR 22. But as explained above, Plaintiff reported to Dr. Murinova in December 2012 that her migraines had "been worse for the last few months." AR 543. Therefore, this statement is not necessarily inconsistent with Plaintiff's statement about her migraines to Dr. Travis five months earlier. Further, the ALJ failed to explain how Plaintiff denying that she had any health problems in May 2010, or making allegedly inconsistent statements about her medications, undermine her subjective symptom testimony. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). Considering the ALJ's lack of record support and corroborating reasoning, the ALJ's second reason for rejecting Plaintiff's migraine testimony is not supported by substantial evidence in the record.

Third, the ALJ found Plaintiff's subjective symptom testimony about her migraines inconsistent with her daily activities. AR 24-25. There are two grounds under which an ALJ may use daily activities to form the basis of an adverse credibility determination: (1) whether the activities contradict the claimant's other testimony, and (2) whether the activities of daily living meet "the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ referred to the first ground by claiming Plaintiff's daily activities were inconsistent with her testimony regarding her "daily disabling headaches." *See* AR 24-25. Although the ALJ listed several activities and concluded they were "incompatible" with Plaintiff's "claims of daily headaches," the ALJ failed to explain *how* any of the cited activities undermined Plaintiff's testimony. *See* AR 24-25. As the ALJ did not explain "*which* daily

activities conflicted with *which* part of [Plaintiff's] testimony," the ALJ erred. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis in original); *see also Lester*, 821 F.3d at 834 (citation omitted) ("General findings [of credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

In addition to lacking the specificity necessary to properly reject Plaintiff's subjective symptom testimony, this reason lacks support from the record with regards to several of the activities the ALJ cited. For instance, although the ALJ wrote Plaintiff "completed a two-year college degree in the spring of 2011," Plaintiff testified she had not taken any college courses since that time. *See* AR 24, 47. The ALJ failed to explain how Plaintiff obtaining a college degree nearly 18 months prior to her alleged onset date of disability undermines her testimony. *See* AR 24. As such, this reason lacks support from substantial evidence in the record.

The ALJ furthermore noted Plaintiff "had gotten married in June 2012, after which she took a two-week honeymoon to Iceland." AR 24. The ALJ wrote Plaintiff "affirmed that she had been able to manage her wedding, the event planning, and her honeymoon with the use of medication[.]" AR 24. Nonetheless, at the hearing, Plaintiff stated she "had a lot of help from [her] maid of honor" in planning her wedding. AR 48. Moreover, contrary to the ALJ's finding about Plaintiff's honeymoon, Plaintiff testified she "certainly had some migraines while . . . in Iceland." AR 53. There were some days Plaintiff "tried to leave the [hotel] room," but "had to go back to the room and lie down." AR 53. Due to the ALJ's failure to consider this relevant

evidence, the ALJ's reasoning about Plaintiff's wedding and honeymoon is not supported by substantial evidence in the record.[4]

The ALJ also found Plaintiff's reports from 2012 and 2016 that she was a "homemaker" incompatible with her "claims of daily headaches[.]" AR 25. Once again, however, the ALJ's finding overlooks relevant evidence in the record. Plaintiff testified at the 2017 hearing that while she previously described herself as a homemaker, she "recently" realized she did not "successfully keep[] up with the demands of homemaking." AR 54. Plaintiff said that while there used to be a "pretense of [her] keeping up with chores . . . dust bunnies and dirty dishes were rampant." AR 54. Thus, considering the ALJ's failure to consider evidence related to Plaintiff's reports of homemaking, this assertion from the ALJ lacks support from substantial evidence in the record, as well.

In sum, given the ALJ's lack of reasoning and record support, the ALJ's assertion that Plaintiff's daily activities contradict her subjective symptom testimony about her migraines is not a clear and convincing reason, supported by substantial evidence, to discount this testimony.

Lastly, the ALJ discounted Plaintiff's migraine testimony because she found Plaintiff's testimony not supported by the objective medical evidence. *See* AR 22-25. A claimant's pain testimony cannot be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.3d 341, 346-47) (9th Cir. 1991) (en banc)). This is true for a claimant's other subjective complaints, as well. *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (holding that, although *Bunnell* was couched in terms of subjective complaints of pain, its

---

[4] Likewise, although the ALJ cited Plaintiff's 2015 trip to New York City as a reason to undermine her testimony, the ALJ again failed to consider evidence about the "grueling" pain Plaintiff experienced on this trip. *See* AR 24, 51.

reasoning extends to non-pain complaints). As this is the only remaining reason the ALJ

provided to discount Plaintiff's testimony about her migraines, this reason alone is not sufficient.

The ALJ failed to provide any clear and convincing reason, supported by substantial

evidence, to discount Plaintiff's subjective testimony about her migraines. As such, the ALJ

erred. Had the ALJ properly considered Plaintiff's testimony, the RFC and hypothetical

questions posed to the vocational expert ("VE") may have contained additional limitations. For

example, the RFC and hypothetical questions may have included limitations reflecting Plaintiff's

testimony that she experienced two to four severe migraines per month during the relevant

period, which required her to lie down in the dark. *See* AR 53, 64-65. The RFC and hypothetical

questions posed to the VE did not contain restrictions reflecting the frequency of Plaintiff's

migraines, or the impact of light and noise on Plaintiff's functioning when she has a migraine.

*See* AR 21, 74-76. Because the ultimate disability determination may have changed with proper

consideration of Plaintiff's testimony about her migraines, the ALJ's error is not harmless and

requires reversal. *See Molina*, 674 F.3d at 1115.

**III.    Whether the ALJ provided specific and legitimate reasons to reject Dr. Murinova's opinion.**

Plaintiff further asserts the ALJ failed to state legally sufficient reasons to discount

medical opinion evidence from treating physician Dr. Murinova. Dkt. 10, pp. 15-17.

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of either a treating or examining physician. *Lester*, 81 F.3d at 830 (citing *Pitzer v. Sullivan*,

908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a

treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific

and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at

830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722

F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Dr. Murinova is a specialist who has provided Plaintiff with medical care for her migraines since December 2012. *See, e.g.*, AR 530-31, 534, 543-46 (treatment notes). In November 2016, Dr. Murinova provided a medical source statement on Plaintiff's migraines. AR 1072-73. Dr. Murinova wrote that although the frequency of Plaintiff's migraines has decreased, she continues to experience migraines despite medication compliance. AR 1072. Dr. Murinova opined Plaintiff experiences 4-6 migraines per month, for an average of 12-hours at one time. AR 1072. Dr. Murinova found Plaintiff experiences nausea, photophobia, and phonophobia with her migraines. AR 1072. Dr. Murinova determined that, when Plaintiff has a migraine, she is "unable to concentrate" and "unable to leave her room/house." AR 1073. Moreover, Dr. Murinova opined that after Plaintiff's migraine passes, "she experiences severe fatigue." AR 1073.

Dr. Murinova wrote Plaintiff has been prescribed two medications for her migraines, one of which (Lyrica) causes "some drowsiness." AR 1073. Dr. Murinova opined that, if Plaintiff attempted to perform sedentary work on a full-time, regular and sustained basis, her migraines would likely cause her to miss work more than three times per month. AR 1073. Lastly, Dr. Murinova found Plaintiff "reasonable/credible in light of her diagnoses." AR 1073.

The ALJ summarized Dr. Murinova's opinion and gave it "little weight" for four reasons:

> **(1)** [Dr. Murinova] did not refer to any medical evidence to support her assessment of disability. **(2)** Examinations of the claimant by Dr. Murinova and her associates were wholly unremarkable during the relevant period and afterwards, with normal neurological findings, normal visual findings, normal

gait, normal concentration and memory, and no acute distress. These benign examination findings even occurred during active reported headaches in March 2014, February 2015, and March 2015. In other words, Dr. Murinova appears to have no objective basis for her assessments. **(3)** Dr. Murinova's own treatment notes indicate that her assessment from November 2016 was based on direct dictation from the claimant regarding the frequency, duration, and effects of her headaches. For various reasons discussed earlier in this decision, the claimant's subjective reports regarding the nature and severity of her headaches are not reliable. **(4)** As already discussed in this decision, the claimant's reports of regular headaches were concurrent with period [sic] of gainful employment **(5)** and her activities approximate to the relevant period are inconsistent with significant limitations in her stamina, concentration, or ability to maintain a schedule.

AR 28-29 (citations omitted) (numbering and emphasis added).

First, the ALJ assigned little weight to Dr. Murinova's opinion because Dr. Murinova did not refer to medical evidence to support her findings. AR 28. An ALJ may reject an opinion that is "inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). But an ALJ cannot reject a treating physician's opinion for not referencing medical evidence where the opinion is supported by the source's own treatment notes contained in the record. *See Burrell*, 775 F.3d at 1140; *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014).

Here, as discussed in additional detail below, the ALJ's first reason for discounting Dr. Murinova's opinion overlooked that Dr. Murinova's treatment notes are in the record and support her opinion. *See, e.g.,* AR 534 (migraines lessening in intensity in February 2013 but still occurring 5 to 7 days per week; extensive body aches and pain in the temples, eyes, and sinus problems); AR 530 (in March 2013, Plaintiff "continues to have severe disabling daily migraines," and discussing with Plaintiff how to treat "her disabling pain"); AR 526 (review of systems in May 2013 shows "headaches, neck pain, and shoulder pain"); AR 521-23 (in November 2013, Plaintiff "has chronic daily headaches and a very strong genetic history of migraines"; review of systems shows headaches, memory trouble, trouble concentrating, lack of

energy, and depression). Thus, the ALJ's first reason for rejecting Dr. Murinova's opinion is not supported by substantial evidence because the ALJ erroneously overlooked supporting treatment notes. *See Burrell*, 775 F.3d at 1140 (ALJ erred in finding a treating source's opinion supported by "little explanation," as the ALJ "overlook[ed] nearly a dozen" relevant treatment notes).

Second, the ALJ found Dr. Murinova's opinion lacked an "objective basis" in view of Dr. Murinova's "wholly unremarkable" examinations. AR 28. The ALJ noted Dr. Murinova's examinations contained "normal neurological findings, normal visual findings, normal gait, normal concentration and memory, and no acute distress." AR 28 (citations omitted). An ALJ cannot reject a physician's opinion in a vague or conclusory manner. *See Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)); *Embrey*, 849 F.2d at 421-22. Rather, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

Here, although the ALJ listed several findings from Dr. Murinova's treatment notes, the ALJ failed to explain how any of the findings undermine Dr. Murinova's opinion. *See* AR 39. Instead, the ALJ "merely states that the objective factors point toward an adverse conclusion" but "makes no effort to relate any of these" facts to "the specific medical opinions and findings [she] rejects." *Embrey,* 849 F.2d at 421. "This approach is inadequate." *Id.* Without more, this is not a specific, legitimate reason, supported by substantial evidence in the record, to discount Dr. Murinova's opinion. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review").

Furthermore, the ALJ's finding overlooked objective evidence from Dr. Murinova which was not "wholly unremarkable." *See* AR 28. At Dr. Murinova's first appointment with Plaintiff

in December 2012, Dr. Murinova wrote Plaintiff experienced "disabling migraines" associated with "very significant stabbing, throbbing, pressure, aching . . . nausea, light sensitivity, and noise sensitivity." AR 543. Dr. Murinova remarked Plaintiff's migraines "fluctuate in intensity." AR 543. On a review of systems, Dr. Murinova noted Plaintiff experienced a lack of energy, trouble concentrating, trouble sleeping, and ringing in the ears. AR 544. Dr. Murinova observed on physical examination Plaintiff experienced "diffuse tenderness that is consistent with fibromyalgia." AR 545.

In her assessment of Plaintiff's condition, Dr. Murinova wrote "there is a strong genetic predisposition [for migraines] with very strong environmental factors." AR 545. Dr. Murinova explained:

> . . . [T]he current evidence is moving towards . . . the epigenetics where the environment affects the cell environment[,] changing genetic expression that . . . causes . . . chronic pain. We know the number of migraineurs have comorbidity with fibromyalgia, chronic fatigue, insomnia, stomach issues, and [Plaintiff] has all of those. . . [T]he most likely factor that really pushed [Plaintiff] into worsening headaches has been the sudden death of her mom who had cancer in 2009. [T]hat was extremely stressful, emotional stress for [Plaintiff] who was very closely attached to her. . . . This then led to a period of physical inactivity and probably worsening of the pain. . . . I have discussed that . . . migraineurs are especially sensitive to getting into rebound headaches with both Tylenol and Vicodin, and she is definitely taking amounts that could push her into worsening daily headaches[.]

AR 545.

Hence, Dr. Murinova opined the evidence showed Plaintiff's migraines were caused by genetic and environmental factors, including medications Plaintiff was taking, and further associated with Plaintiff's fibromyalgia and other conditions. *See* AR 545. The ALJ, however, failed to discuss these findings. Additionally, as discussed below, "there is no test that exists to establish migraine headache." *See Bree Lyn C-W. v. Commissioner*, 2018 WL 6331322, at *3 (W.D. Wash. Nov. 15, 2018) (citations omitted). Because the ALJ discounted Dr. Murinova's

opinion without discussing significant, probative evidence from her treatment notes, the Court

cannot determine the ALJ's finding is supported by substantial evidence. *See Flores v. Shalala*,

49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.

1984)) (the ALJ "may not reject 'significant probative evidence' without explanation").

Third, the ALJ determined Dr. Murinova based her opinion "on direct dictation" from

Plaintiff about her migraines. AR 28-29. An ALJ may reject a physician's opinion "if it is based

to a large extent on a claimant's self-reports that have been properly discounted as incredible."

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation and internal quotation marks

omitted). Yet here, as explained above, the ALJ failed to properly discount Plaintiff's subjective

symptom testimony about her migraines. *See* Section II., *supra*. Further, this Court has held "a

migraine diagnosis is dependent upon the patient's description of symptom patterns." *McPherson*

*v. Colvin*, 2015 WL 6692243, at *4 (W.D. Wash. Nov. 2, 2015) (citation and quotation marks

omitted). This is because "there is no test that exists to establish migraine headaches." *See Bree*

*Lyn C-W.*, 2018 WL 6331322, at *3.

Here, the record is replete with treatment notes containing migraine diagnoses and

Plaintiff discussing medication management and other treatment options with medical providers

for this impairment. *See, e.g.*, AR 521-23, 526, 530-31, 534, 543-46, 1072-73, 1074-77. Plaintiff

has also sought specialized care for her migraines. *See, e.g.*, AR 543-46, 1119-28, 1129-37,

1074-77, 1082-87. As such, the ALJ's finding that Dr. Murinova's opinion was based on

Plaintiff's reports is not a specific and legitimate reason to discount this opinion. *See Thompson*

*v. Berryhill*, 2017 WL 4296971, at *1 (W.D. Wash. Sept. 28, 2017) (the Commissioner's

argument that no objective evidence supports the claimant's migraines was error, as "no such test

exists. . . . This isn't a case in which there is no evidence [the claimant] suffers from chronic

headaches. On the contrary . . . medical providers repeatedly state one of his 'chronic problems' is 'chronic post-trauma headache[.]'"); *see also Bree Lyn C-W.*, 2018 WL 6331322, at *3 (in assessing the claimant's migraines, the ALJ erred in finding diagnostic imaging "unremarkable," as "there is no test that exists to establish migraine headache.").

Fourth, the ALJ gave Dr. Murinova's opinion little weight because Plaintiff reported headaches concurrent with her previous work. AR 29. Yet the ALJ failed to explain how Plaintiff's ability to previously work despite her reports of migraines undermine Dr. Murinova's opinion. *See* AR 29; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) ("the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence"). As discussed with respect to Plaintiff's testimony, the ALJ also failed to consider evidence showing Plaintiff's migraines worsened after she stopped working. *See* AR 543, 545. Accordingly, this is not a specific and legitimate reason, supported by substantial evidence, to reject Dr. Murinova's findings.

Fifth, the ALJ discounted Dr. Murinova's opinion by finding Plaintiff's activities "inconsistent with significant limitations in her stamina, concentration, or ability to maintain a schedule." AR 29. An ALJ need not accept an opinion which is inadequately supported "by the record as a whole." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Yet here, the ALJ again provided vague, conclusory reasoning, as she failed to identify any specific evidence in the record of Plaintiff's activities and explain how they contradict Dr. Murinova's opinion. *See Garrison*, 759 F.3d at 1012-13 ("an ALJ errs when [she] rejects a medical opinion or assigns it little weight while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for [her] conclusion"). Moreover, as

the Court previously determined, the ALJ's findings regarding Plaintiff's activities lack support from substantial evidence in the record. *See* Section II., *supra*. As the ALJ failed to adequately explain how Plaintiff's activities undermine Dr. Murinova's opinion, the ALJ's final reason for giving Dr. Murinova's opinion little weight is not specific and legitimate nor supported by substantial evidence.

For the above stated reasons, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Murinova's opinion. Therefore, the ALJ erred. Had the ALJ properly considered the opinions of Dr. Murinova, the RFC and hypothetical question may have included additional limitations. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 29th day of January, 2019.

David W. Christel
United States Magistrate Judge